

**NUMBER 13-11-00009-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**ERNEST FLORES,**                                            **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                        **Appellee.**

### On appeal from the 319th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Garza

On December 16, 2000, appellant, Ernest Flores, entered an "open" plea of guilty to unlawful possession with intent to deliver four grams or more but less than 200 grams of cocaine (Count 1), heroin (Count 2), and methamphetamine (Count 3), each a first-degree felony offense. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010) (providing that manufacturing, delivery, or possession with intent to deliver a

penalty group one substance between four and 200 grams is first-degree felony). At a hearing on the same day, the trial court accepted appellant's pleas and heard testimony by Lonnie Garcia, a narcotics officer with the City of Corpus Christi; Mario Cavazos, appellant's pre-trial probation officer; and appellant. At the conclusion of the hearing, the trial court found that appellant used a deadly weapon, a firearm, in the commission of the offenses. The trial court sentenced appellant to a life sentence for each offense, with the sentences to run concurrently. *See* TEX. PENAL CODE ANN. § 12.32 (West 2011). By a single issue, appellant contends the evidence is insufficient to support the trial court's deadly weapon finding. We affirm as modified.

## I. BACKGROUND

On March 29, 2009, Officer Garcia and other narcotics squad officers entered appellant's house under a search warrant. Appellant and his wife, Aleyda Flores, were in the living room. Officer Garcia conducted a pat-down search of appellant and found quantities of methamphetamine, crack cocaine, and cocaine in appellant's pockets; a baggie of marijuana was also found in appellant's underwear. The other officers conducted a search of appellant's residence, which yielded the following items: (1) marijuana, heroin, and cocaine found in a container on a dresser in the master bedroom; (2) two digital scales, one found in the kitchen and a second found in the bathroom; and (3) numerous firearms, including an assault rifle and another rifle found in the master bedroom, three handguns found in the master bedroom closet, and a loaded Bersa pistol found on the kitchen counter. Officer Garcia testified that the handgun on the kitchen counter was approximately twenty feet from appellant when the officers entered the house. According to Officer Garcia, the street value of the drugs

2

found in the residence was over $5,000. Officer Garcia said, based on his experience as a narcotics officer, that it is a common practice for people who sell drugs from a residence to keep weapons around to protect the drugs and money.

Appellant testified that two of the rifles were hunting rifles and a couple of the other firearms were antiques. On cross-examination, appellant admitted that the loaded Bersa handgun was within his reach when the officers entered. According to appellant, the handgun was "just out" and he had no intention of using it to protect the drugs.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

The court of criminal appeals has held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902–03, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, we review claims of evidentiary insufficiency under "a rigorous and proper application of the *Jackson* standard of review." *Id.* at 906–07, 912. Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Brooks*, 323 S.W.3d at 898–99 (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt"). The fact-finder is the exclusive judge of the credibility of

3

witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

A deadly weapon finding can be made if a deadly weapon "was used or exhibited during the commission of a felony offense. . . ." TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3g(a)(2) (West Supp. 2011). Thus, "we must determine whether a rational trier of fact could have found beyond a reasonable doubt that [a]ppellant used the guns to facilitate possession and delivery of the narcotics." *See Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004).

In the context of a deadly weapon finding, the term "use" means any employment of a deadly weapon, even simple possession, if that possession facilitates the associated felony. *Id.*; *see Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989) (holding that "use" of deadly weapon "extends as well to any employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony"). The term "exhibit" requires a weapon to be consciously shown, displayed, or presented to be viewed. *Coleman*, 145 S.W.3d at 652; *Patterson*, 769 S.W.2d at 941.

## III. DISCUSSION

4

Here, officers executing the search warrant found a loaded handgun in plain view on the kitchen counter, easily accessible to appellant. In the master bedroom, where additional quantities of drugs were found, the police found an assault rifle, a .22-caliber rifle, and three other handguns. At least some of the weapons found in the bedroom were loaded. In the kitchen and bathroom, the officers found digital scales. Appellant admitted that he had been selling drugs for about nine months. Officer Garcia testified that it is common for drug traffickers to keep weapons to protect themselves and their drugs and cash.

Under the appropriate standard of review and considering the meaning of "used" in the referenced case law, we hold that the evidence is sufficient to support a finding that appellant used the weapons to facilitate his commission of the offenses of possession with intent to deliver. *See Coleman*, 145 S.W.3d at 654–55 (upholding deadly weapon finding when drugs and weapons were found in bedroom); *Gale v. State*, 998 S.W.2d 221, 225–26 (Tex. Crim. App. 1999) (upholding deadly weapon finding where guns found in closet with drugs and cash); *Musgrove v. State*, No. 02-08-029-CR, 2008 Tex. App. LEXIS 9484, at *6–7 (Tex. App.—Fort Worth Dec. 18, 2008, pet. ref'd) (mem. op.) (not designated for publication) (upholding deadly weapon finding where drugs and drug paraphernalia were found throughout premises and weapons were found on dresser next to appellant's bed).

We note that the judgment recites the statute as section "481.115" of the health and safety code. However, section 481.115 is the statute for possession of a controlled substance, whereas appellant was indicted and pleaded guilty to possession with intent to deliver a controlled substance under section 481.112. *See* TEX. HEALTH & SAFETY

5

CODE ANN. §§ 481.112, 481.115 (West 2010). Accordingly, we modify the judgment to reflect the correct statute. The rules of appellate procedure provide that an appellate court may modify the trial court's judgment and affirm it as modified. TEX. R. APP. P. 43.2(b). When an appellate court has the necessary data and evidence before it for modification, the judgment and sentence may be modified on appeal. *Banks v. State*, 708 S.W .2d 460, 461 (Tex. Crim. App. 1986).

## IV. CONCLUSION

We overrule appellant's sole issue and affirm the trial court's judgment as modified.

DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)

Delivered and filed the
9th day of August, 2012.